# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10336

United States Court of Appeals
Fifth Circuit

**FILED**

September 22, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

　　　　Plaintiff–Appellee,

v.

CURTIS MARROW HOWELL,

　　　　Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before CLEMENT and OWEN, Circuit Judges, and JORDAN, District Judge.*
PRISCILLA RICHMAN OWEN, Circuit Judge:

Curtis Marrow Howell pleaded guilty to the federal crime of possession of a firearm by a convicted felon, a violation of 18 U.S.C. § 922(g)(1). At sentencing, the district court concluded that Howell's prior conviction under Texas Penal Code § 22.01(a)(1), (b)(2)(B) for assault constituted a "crime of violence" within the meaning of United States Sentencing Guidelines § 4B1.2(a). This resulted in an enhancement to the base offense level under § 2K2.1(a)(3) of the Guidelines. The district court sentenced Howell to 100

---

* District Judge of the Southern District of Mississippi, sitting by designation.

No. 15-10336

months of imprisonment, and Howell has appealed contending that his Texas conviction is not a crime of violence. We affirm.

## I

Howell pleaded guilty, without a plea agreement, to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The Presentence Report (PSR) indicated that the handgun Howell possessed was a semiautomatic firearm capable of accepting a large-capacity magazine, which increased the base offense level under certain provisions of § 2K2.1(a) of the Guidelines.[1] The PSR also reflected that Howell had previously been convicted of a third-degree felony under a Texas statute, which provided that a person commits an offense if he or she

> intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse . . . [and] the offense is committed against . . . a person [who is a family member or has another defined relationship with the defendant] . . . [and] the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.[2]

The PSR concluded that Howell's conviction under this statute qualified as a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a),[3] without

---

[1] *See*, *e.g.*, U.S. Sentencing Guidelines Manual § 2K2.1(a)(3) (U.S. Sentencing Comm'n 2014) (directing a base offense level of 22 when "(A) the offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense").

[2] Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B) (West 2009).

[3] U.S. Sentencing Guidelines Manual § 4B1.2(a) (U.S. Sentencing Comm'n 2014) ("The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.").

No. 15-10336

specifying whether one or both of the two subsections of that provision supported this conclusion.    Pursuant to U.S.S.G. § 2K2.1(a)(3), the PSR recommended a base offense level of 22.  After applying other adjustments, the PSR calculated a total offense level of 27 and a criminal history category of IV, yielding an advisory sentencing range of 100 to 120 months of imprisonment.

Howell filed written objections to the base offense level, arguing that the prior Texas conviction at issue in this appeal did not qualify as a "'crime of violence' under U.S.S.G. § 4B1.2."  Howell advanced two arguments.  First, he contended that the Texas offense could not be a crime of violence because the *mens rea* required in the Texas statute included "recklessly" committing the assault.  The Texas indictment alleged that he intentionally, knowingly, and recklessly caused injury to another person, and he asserted in his objections to the PSR that his guilty plea to that indictment must be construed as a plea to the least culpable conduct, which was recklessness.  He did not specifically argue that "use" as used in subsection (1) of § 4B1.2(a) could not encompass reckless conduct, nor did he allude to the "use" language in that subsection. He did expressly address the residual clause embodied in § 4B1.2(a)(2), but he acknowledged that his argument regarding recklessness in this context was foreclosed by then-existing-circuit precedent, *United States v. Espinoza*.[4]  In *Espinoza*, this court held that a violation of Texas Penal Code § 22.01(a) and (b)(2)(A), with a *mens rea* of recklessness qualified as a "violent felony" under the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C.

---

[4] 733 F.3d 568 (5th Cir. 2013).

3

No. 15-10336

§ 924(e)(2)(B)(ii).[5]  Second, Howell objected to the PSR on the basis that the residual clause in § 4B1.2(a)(2) is unconstitutionally vague.

A PSR addendum recommended that the court reject Howell's objection regarding recklessness as foreclosed by precedent but did not address Howell's vagueness challenge.  The addendum also attached the indictment, judgment, and judicial confession pertaining to Howell's prior Texas conviction.

At the sentencing hearing, Howell reaffirmed his objections to the offense-level enhancement for his prior Texas conviction of assault.   The district court overruled those objections and imposed a sentence of 100 months of imprisonment, to be followed by two years of supervised release.  Without the enhancement, Howell contends that his offense level would be 25, yielding an advisory sentencing range of 84 to 105 months of imprisonment.

Howell has appealed.

## II

Because we conclude that Howell's prior Texas assault offense "has as an element the use, attempted use, or threatened use of physical force against the person of another," within the meaning of § 4B1.2(a)(1) of the Guidelines, we do not reach the constitutional vagueness challenge to the "residual" clause of this Guidelines provision set forth in § 4B1.2(a)(2).  The "residual" clause in § 4B1.2(a)(2) is identical in its wording to the "residual" clause in the ACCA,[6] with the exception of the inclusion of the words "of a dwelling" after "burglary" in the Guidelines section.  While Howell's appeal was pending, the Supreme

---

[5] *Id.* at 572-74.

[6] *Compare* U.S. Sentencing Guidelines Manual § 4B1.2(a)(2) (Sentencing Comm'n. 2014), *with* 18 U.S.C. § 924(e)(2)(B)(ii).

No. 15-10336

Court held in *Johnson v. United States* that the residual clause in the ACCA is unconstitutionally vague.[7]

In light of *Johnson*, some of the reasoning in our decision in *United States v. Espinoza*[8] remains persuasive, but its holding is no longer binding precedent, since the *Espinoza* opinion concluded that the Texas offense of assault, for which Howell was convicted, was a "violent felony" under the residual clause of the ACCA,[9] and that clause is no longer an enforceable part of the ACCA.

However, the issue of whether the residual clause in § 4B1.2(a)(2) (as distinguished from the residual clause of the ACCA) is void for vagueness presents a constitutional issue that our court did not address in *Espinoza*. The Courts of Appeals that have considered the issue have divided: the Eleventh Circuit has held that none of the Sentencing Guidelines' provisions can be attacked as unconstitutional;[10] the Third, Sixth, Seventh, and Tenth Circuits have held that § 4B1.2(a)(2) is unconstitutionally vague.[11] The Supreme Court may soon resolve the question; it has granted a petition for writ of certiorari in

---

[7] 135 S. Ct. 2551, 2563 (2015).

[8] 733 F.3d 568 (5th Cir. 2013).

[9] *Id.* at 569, 573.

[10] *See United States v. Matchett*, 802 F.3d 1185, 1196 (11th Cir. 2015), *reh'g en banc denied*, No. 14-10396, 2016 WL 4757211 (September 13, 2016); *see also United States v. Gonzalez-Longoria*, No. 15-40041, 2016 WL 4169127, at *6, *8 (5th Cir. Aug. 5, 2016) (Jones, J., concurring) (contending that the majority opinion's holding that 18 U.S.C. § 16(b) is not unconstitutionally vague "could have been obviated with a holding that neither the U.S. Sentencing Guidelines, nor extrinsic statutes cross-referenced in the Guidelines, are subject to challenges based on the Due Process Clause's prohibition of vague laws" and that "Due process requires only notice and predictability in the statutory range of punishments following conviction. . . . [and] vagueness challenges cannot stand against a discretionary scheme of sentencing within that range").

[11] *See United States v. Calabretta,* No. 14-3969, 2016 WL 3997215, at *4 (3d Cir. July 26, 2016); *United States v. Pawlak*, 822 F.3d 902, 903 (6th Cir. 2016); *United States v. Hurlburt*, No. 14-3611, 2016 WL 4506717, at *1 (7th Cir. Aug. 29, 2016); *United States v. Madrid*, 805 F.3d 1204, 1212 (10th Cir. 2015).

*Beckles v. United States*,[12] and the issue is presented in that case. However, we are obliged to consider non-constitutional issues that would be dispositive of the appeal before we reach a constitutional question.[13] We therefore first consider the Government's contention that Howell's Texas conviction is a "crime of violence" within the meaning of § 4B1.2(a)(1). The Government contends that the Texas assault offense "has as an element the use, attempted use, or threatened use of physical force against the person of another."[14]

### III

"For properly preserved claims, this court reviews the district court's interpretation and application of the Sentencing Guidelines *de novo*."[15] It is at least subject to debate, however, whether Howell preserved a claim that his prior offense did not have "as an element the use, attempted use, or threatened use of physical force against the person of another."

Conspicuously absent from the Government's brief is a statement or argument as to the standard of review that we should apply. Nor does the

---

[12] 136 S.Ct. 2510 (2016).

[13] *See, e.g., Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("[I]t is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.") (quoting *Escambia Cty v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)); *Jean v. Nelson*, 472 U.S. 846, 854 (1985) ("Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.") (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)); *Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 209 (1960) ("By the settled canons of constitutional adjudication the constitutional issue should have been reached only if, after decision of two non-constitutional questions, decision was compelled."); *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. . . . Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").

[14] U.S. Sentencing Guidelines Manual § 4B1.2(a)(1) (Sentencing Comm'n. 2014)

[15] *United States v. Cedillo-Narvaez*, 761 F.3d 397, 401 (5th Cir. 2014).

No. 15-10336

Government contend that Howell's objections in the district court were inadequate to preserve each of his contentions on appeal. We will assume, without deciding, that Howell's objections were sufficient to preserve the contention that his offense is not one involving a use of force, since we conclude that under either a de novo standard or the plain error standard of review, the district court did not err in determining that the prior Texas offense was a crime of violence.

It is not entirely clear if the district court considered whether Howell's Texas assault conviction has as an element the "use" of physical force under subsection (a)(1) of § 4B1.2. We may nevertheless affirm the district court's application of the Guidelines on any ground supported by the record.[16]

**IV**

The Government maintains that we need not consider whether committing the Texas offense at issue with the mental state of recklessness constitutes a crime of violence under § 4B1.2 because, the Government asserts, Howell judicially admitted in the state court of conviction that he acted intentionally in committing the assault. The state court records reflect that Howell pled guilty to the allegations in the indictment that he acted "intentionally, knowingly and recklessly."

This court's decisions as to the effect of such a plea are in tension. Before we consider those decisions, however, an explanation of the so-called "categorical" and "modified categorical" approaches is necessary. In determining if a prior conviction is for an offense enumerated or defined in a Guidelines provision, we generally apply the categorical approach and look to

---

[16] *See, e.g.*, *United States v. Garcia-Gonzalez*, 714 F.3d 306, 314 (5th Cir. 2013) ("We may affirm an enhancement on any ground supported by the record.") (citing *United States v. Jackson*, 453 F.3d 302, 308 n.11 (5th Cir. 2006)).

the elements of the offense enumerated or defined by the Guideline section and compare those elements to the elements of the prior offense for which the defendant was convicted.[17]  We do not consider the actual conduct of the defendant in committing the offense.[18]  If the offense is an enumerated offense, such as burglary, we first determine the elements contained in the generic, contemporary meaning of that offense.[19]

In one of several decisions on the subject, the Supreme Court explained the application of the categorical approach in *Descamps v. United States*.[20]  The

---

[17] *United States v. Hinkle*, No. 15-10067, 2016 WL 4254372, at *2 (5th Cir. Aug. 11, 2016).

[18] *Id. See, e.g., United States v. Carrasco-Tercero*, 745 F.3d 192, 195 (5th Cir. 2014) ("This court employs a categorical approach in determining whether an offense qualifies as a crime of violence under § 2L1.2. '[W]e examine the elements of the offense, rather than the facts underlying the conviction or the defendant's actual conduct, to determine whether an offense meets the definition of a [crime of violence].'" (quoting *United States v. Ortiz-Gomez*, 562 F.3d 683, 684 (5th Cir. 2009))).

[19] *See, e.g., Taylor v. United States*, 495 U.S. 575, 598 (1990) (construing the ACCA, 18 U.S.C. § 924(e), and concluding that "[a]lthough the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.").

[20] 133 S. Ct. 2276, 2283 (2013) (citations omitted) (construing the ACCA):

Sentencing courts may "look only to the statutory definitions"—*i.e.*, the elements—of a defendant's prior offenses, and *not* "to the particular facts underlying those convictions."  If the relevant statute has the same elements as the "generic" ACCA crime, then the prior conviction can serve as an ACCA predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is "necessarily . . . guilty of all the [generic crime's] elements."  But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form.  The key, we emphasized, is elements, not facts.  So, for example, we held that a defendant can receive an ACCA enhancement for burglary only if he was convicted of a crime having "the basic elements" of generic burglary—*i.e.*, "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."  And indeed, we indicated that the very statute at issue here, § 459, does not fit that bill because "California defines 'burglary' so broadly as to include shoplifting."

8

Supreme Court also explained in *Descamps*, as it had in prior opinions, that when a statute defines more than one crime, and not all of them constitute an enumerated generic offense, courts employ the "modified categorical approach" to "determine which crime formed the basis of the defendant's conviction."[21] Courts may consult certain records pertaining to the prior offense to ascertain if the conviction rested on the generic or defined crime or instead was an over-inclusive offense that could not support a sentence enhancement.[22]  But, if the statute of conviction is not divisible, "[t]he modified [categorical] approach . . . has no role to play."[23]

---

[21] *Id.* at 2283-84; *see also id.* 2284-85 (citations omitted):

We recognized that when a statute so "refer[s] to several different crimes," not all of which qualify as an ACCA predicate, a court must determine which crime formed the basis of the defendant's conviction.  That is why, we explained, *Taylor* and *Shepard* developed the modified categorical approach.  By reviewing the extra-statutory materials approved in those cases, courts could discover "which statutory phrase," contained within a statute listing "several different" crimes, "covered a prior conviction."  And a year later, we repeated that understanding of when and why courts can resort to those documents: "[T]he 'modified categorical approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction."

Applied in that way—which is the only way we have ever allowed—the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute.  The modified approach thus acts not as an exception, but instead as a tool.  It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime.  And it preserves the categorical approach's basic method: comparing those elements with the generic offense's.  All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates "several different . . . crimes."  If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of. That is the job, as we have always understood it, of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense.

[22] *See, e.g., Shepard v. United States*, 544 U.S. 13, 26 (2005).
[23] *Descamps*, 133 S. Ct. at 2285.

No. 15-10336

The Government contends that Howell's statute of conviction is divisible and therefore that his guilty plea and accompanying admissions establish that he was convicted of intentionally impeding the breath or circulation of the victim. Howell disagrees, observing that in *United States v. Espinoza*, this court said that the defendant's "judicial confession is simply a blanket statement admitting that he committed the assault with every listed category of mental culpability," but that "[t]his does not support a finding that Espinoza committed the act intentionally and knowingly and *not* recklessly."[24] We concluded in *Espinoza* that "we apply the 'least culpable means' analysis to this case and assume that Espinoza's offense was committed recklessly."[25]

The Government contends that *Espinoza* failed to adhere to prior, binding precedent of this court, and that our court has disapproved of *Espinoza*'s conclusion regarding the import of a guilty plea. The Government cites our decision in *United States v. Conde-Castaneda*, which said:

> *Espinoza* cannot overturn the earlier decided case of *Garcia–Arellano*. To the extent that the holding of *Espinoza* is inconsistent with *Garcia–Arellano*, *Garcia–Arellano* controls. *Espinoza* cited no authority when it stated that the judicial confession failed to support the enhancement. *Espinoza*'s scant reasoning indicates either that the case is a true outlier in our caselaw, that its pronouncement was dicta, or both.[26]

In *Conde-Castaneda*, we considered a Texas burglary statute that set forth three subsections describing what constituted burglary of a habitation, and concluded that it contained divisible crimes.[27] We therefore held "that the

---

[24] 733 F.3d 568, 572 (5th Cir. 2013).

[25] *Id.* (quoting *United States v. Houston*, 364 F.3d 243, 246 (5th Cir. 2004)).

[26] 753 F.3d 172, 178 (5th Cir. 2014) (citations omitted) (referencing *United States v. Garcia-Arellano*, 522 F.3d 477 (5th Cir. 2008)).

[27] *Id.* at 176 (examining Tex. Penal Code § 30.02(a)).

modified categorical approach applies here," and we relied on the defendant's written confession in concluding that he had been convicted of the generic crime of burglary,[28] which constituted a "crime of violence" within the meaning of § 2L1.2(b)(1)(A)(ii) of the Guidelines.[29]

The *Conde-Castaneda* decision discussed *United States v. Garcia-Arellano*, in which this court was reviewing a Guidelines sentencing enhancement for plain error.[30]  The prior offense was a conviction under Texas Health and Safety Code section 481.112(a), which the district court held was a "drug trafficking offense" under § 2L1.2(b)(1)(B) of the Guidelines.[31]  We recognized that the Texas statute at issue, section 481.112(a), "encompasses 'both conduct that does constitute a drug trafficking offense . . . and conduct that does not (offering to sell cocaine).'"[32]  But we concluded that based on the record in that case, there was a means of determining whether the conviction was for conduct that did constitute a drug trafficking offense.  The *Garcia-Arellano* decision held that "a written judicial confession also constitutes a 'comparable judicial record' under *Shepard*, and that it may be considered in determining whether a defendant's prior conviction constitutes a drug trafficking offense under the guidelines."[33]  Because Garcia-Arellano had judicially admitted the Texas indictment's charges against him and admitted that he knowingly *and* intentionally delivered a controlled substance as well

---

[28] *Id.* at 177-78.
[29] U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii) (Sentencing Comm'n. 2013).
[30] 522 F.3d 477, 480 (5th Cir. 2008).
[31] *Id.* at 479.
[32] *Id.* at 480 (quoting *United States v. Morales-Martinez*, 496 F.3d 356, 358 (5th Cir. 2007), and citing *United States v. Gonzales*, 484 F.3d 712, 714-15 (5th Cir. 2007)).
[33] *Id.* at 481 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

as admitting to an offer to sell, our court concluded that the Texas conviction qualified as a drug trafficking offense under the Guidelines.[34]

Six years after our decision in *United States v. Garcia-Arellano*, the Supreme Court emphasized, in *United States v. Castleman*, that if a statute is "divisible," meaning that it sets forth separate offenses, then it is permissible to consult the defendant's guilty plea to determine which offense was the basis for the prior conviction.[35] The Court held that because Castleman had pleaded guilty to knowingly and intentionally causing bodily injury, he had committed a predicate offense within the meaning of 18 U.S.C. § 922(g)(9).[36]

The Government recognizes in its briefing in the present case that a court may only apply the so-called modified categorical approach discussed in *Shepard* and other cases if the statute of conviction is "divisible," citing the Supreme Court's decision in *Descamps v. United States*.[37] The issue that has divided courts, and with great respect to the Supreme Court, confused courts attempting to apply *Descamps* and the decisions preceding it,[38] is how to determine if a statute is "divisible."

---

[34] *Id.*

[35] 134 S. Ct. 1405, 1414 (2014) ("[T]he parties do not contest that [the Tennessee statute under which the defendant was previously convicted] is a 'divisible statute' . . . . We may accordingly apply the modified categorical approach, consulting the indictment to which Castleman pleaded guilty in order to determine whether his conviction did entail the elements necessary to constitute the generic federal offense.").

[36] *Id.*

[37] 133 S. Ct. 2276, 2281 (2013).

[38] *See Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016) (recognizing "a Circuit split over whether ACCA's general rule—that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense—gives way when a statute happens to list various means by which a defendant can satisfy an element") (citing *United States v. Mathis*, 786 F.3d 1068 (8th Cir. 2015) (recognizing such an exception); *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015) (same); *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014) (same); *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014) (rejecting that exception); *Omargharib v. Holder*, 775 F.3d 192 (4th Cir. 2014) (same)).

While this appeal was pending, the Supreme Court issued its decision in *Mathis v. United States*,[39] which provided needed guidance on when a statute of conviction is divisible. Though *Mathis* dealt with the ACCA, rather than the Guidelines, the methodology of determining whether a statute is divisible and therefore whether the modified categorical approach may be employed, is the same, unless the Guidelines were to specify otherwise. The Supreme Court explained that if a statute sets forth only various means of committing the offense, it is not divisible, but if the statute sets forth more than one offense by including alternative elements of each offense, then the statute is divisible.[40] The test to distinguish means from elements is whether a jury must agree.[41]

In *Mathis*, an Iowa burglary statute criminalized entry into or onto locations that included a building, a structure, land, water, or an air vehicle.[42] Because generic burglary does not proscribe burglary of vehicles, the Iowa offense was overly inclusive; it included conduct that was not generic burglary.[43] The sentencing court considered documents pertaining to Mathis's prior convictions, which reflected that Mathis had burgled structures not vehicles, and the district court concluded that the sentencing enhancement

---

[39] 136 S. Ct. 2243 (2016).

[40] *See id.* at 2256 (explaining that a "sentencing court faced with an alternatively phrased statute" must first decide if the "listed items are elements or means. If they are elements, the court should [apply the categorical approach]. . . . But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution.").

[41] *See id.* at 2249 (explaining that the jurors in the *Mathis* case did not need to make any specific finding as to where the crime occurred, where the statute merely "itemize[d] the various places that crime could occur as disjunctive factual scenarios rather than separate elements").

[42] *Id.* at 2250.

[43] *Id.* at 2256.

under the ACCA applied.[44]  The Eighth Circuit affirmed, holding that whether the itemized list of places "amount[ed] to alternative elements or merely alternative means to fulfilling an element, the statute is divisible, and we must apply the modified categorical approach."[45]  The Supreme Court reversed the Eighth Circuit because the Iowa Supreme Court has held that the Iowa statute sets forth "alternative method[s] of committing [the] single crime," and an Iowa "jury need not agree on which of the locations was actually involved."[46]

We recently discussed the import of *Mathis* in *United States v. Hinkle*:

> The decision in *Mathis* instructs that there is a difference between alternative elements of an offense and alternative means of satisfying a single element.  Elements must be agreed upon by a jury.  When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense.[47]

In light of *Mathis*, we know that we must determine whether "listed items" in a state statute "are elements or means," and if "a state court decision definitively answers the question" our inquiry is at an end.[48]  The Texas Court of Criminal Appeals has held that the three mental states listed in section 22.01(a) do not describe three distinct offenses.  The Texas court has said:

> This *actus reus* [which the court held is "causing bodily injury"] must be accompanied by a culpable mental state.  In its "bodily injury" assault subsection [22.01(a)], the legislature stated that any of three culpable mental states suffices: intentionally, knowingly, or recklessly causing bodily injury.  The legislature was apparently neutral about which of these three mental states

---

[44] *Id.* at 2250.

[45] *United States v. Mathis*, 786 F.3d 1068, 1075 (8th Cir. 2015).

[46] *Mathis*, 136 S. Ct. at 2250 (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)).

[47] No. 15-10067, 2016 WL 4254372, at *4 (5th Cir. Aug. 11, 2016) (citations omitted).

[48] *Mathis*, 136 S. Ct. at 2256.

No. 15-10336

accompanied the forbidden conduct because all three culpable mental states are listed together in a single phrase within a single subsection of the statute.   There is no indication that the legislature intended for an "intentional" bodily injury assault to be a separate crime from a "knowing" bodily injury assault or that both of those differ from a "reckless" bodily injury assault.  All three culpable mental states are strung together in a single phrase within a single subsection of the statute. All result in the same punishment.  They are conceptually equivalent.[49]

Though this decision of the Texas court is not definitive in the sense that it did not explicitly consider the "intentionally, knowingly, or recklessly" mental states set forth in subsection 22.01(b)(2)(B), it is clear from the court's reasoning that it would not construe the import of listing these mental states any differently than it construed the same listing in the preceding subsection of the statute.  Nor can we discern any basis for the conclusion that the Texas Legislature intended to create three separate offenses depending on the mental state under subsection (b)(2)(B) but did not intend to do so when it used the same language in subsection (a).

This means that the offense for which Howell was convicted is not divisible on the basis of a defendant's mental state.  A jury could permissibly find a defendant guilty even though some jurors might conclude the accused acted "intentionally," others might conclude that the accused acted "knowingly," and others might find only that the accused acted "recklessly," as long as the jury found that the accused "intentionally, knowingly, *or* recklessly imped[ed] the normal breathing or circulation of the blood of the person" assaulted.[50]

---

[49] *Landrian v. State*, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008) (citations omitted).

[50] *Price v. State*, 457 S.W.3d 437, 442 (Tex. Crim. App. 2015) (emphasis added) (holding that "the offense defined by sections 22.01(a)(1) and (b)(2)(B) has three parts, two of which include culpable mental states" and that "intentionally, knowingly, or recklessly" in

15

No. 15-10336

Accordingly, the modified categorical approach cannot be employed to "narrow" the statute of conviction, and Howell's admission of guilt does not establish that he was convicted of a distinct offense of intentionally causing the specified bodily injury as distinguished from recklessly causing the injury. We therefore must consider whether recklessly causing bodily injury by recklessly impeding breathing or circulation[51] "has as an element the use, attempted use, or threatened use of physical force against the person of another."[52]

## V

The Government contends, as an alternative ground for affirming the district court's judgment, that every means of committing the offense for which Howell was convicted has as an element the use of force. Howell responds that our court's decision in *United States v. Vargas-Duran*[53] has construed "use" of physical force to require that a defendant intentionally use force. Howell also relies on a footnote in the Supreme Court's decision in *United States v. Castleman*, which said, "[a]lthough *Leocal* reserved the question whether a reckless application of force could constitute a 'use' of force, the Courts of Appeals have almost uniformly held that recklessness is not sufficient."[54]

The Supreme Court did not resolve in *Castleman* whether "reckless causation of bodily injury" could constitute the use of force.[55] In *Castleman*, 18

---

the third part modifies "impeding the normal breathing or circulation of the blood of the person").

[51] *See id.*

[52] U.S. Sentencing Guidelines Manual § 4B1.2(a)(1) (Sentencing Comm'n. 2014)

[53] 356 F.3d 598, 603 (5th Cir. 2004).

[54] 134 S. Ct. 1405, 1414 n.8 (2014) (internal citations omitted) (citing *Leocal v. Ashcroft*, 543 U.S. 1, 13 (2004)).

[55] *Id.* at 1413; *see also Voisine v. United States*, 136 S. Ct. 2272, 2277 (2016) ("[W]e expressly left open [in *Castleman*] whether a reckless assault also qualifies as a 'use' of

No. 15-10336

U.S.C. § 922(g)(9) "forbade the possession of firearms by anyone convicted of 'a misdemeanor crime of domestic violence,'" and the Court concluded that Castleman's conviction under a Tennessee statute for knowingly or intentionally causing bodily injury to the mother of his child was a "misdemeanor crime of domestic violence."[56]

However, while the present appeal was pending, the Supreme Court held in *Voisine v. United States*, that "misdemeanor assault convictions for reckless (as contrasted to knowing or intentional) conduct trigger the statutory firearms ban" in 18 U.S.C. § 922(g)(9).[57]   The phrase "misdemeanor crime of domestic violence," used in § 922(g)(9), was defined in another section of the statute:

> [T]he term "misdemeanor crime of domestic violence" means an offense that--
>
> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) *has, as an element, the use or attempted use of physical force*, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.[58]

Accordingly, as the Supreme Court recognized, "Congress defined that phrase to include crimes that necessarily involve the 'use . . . of physical force.'"[59]   The Supreme Court held, "[r]eckless assaults, no less than the knowing or intentional ones we addressed in *Castleman*, satisfy that

---

force—so that a misdemeanor conviction for such conduct would trigger § 922(g)(9)'s firearms ban.").

[56] 134 S. Ct. at 1414.

[57] 136 S. Ct. 2272, 2276 (2016).

[58] 18 U.S.C. § 921(a)(33)(A) (emphasis added).

[59] *Voisine*, 136 S. Ct. at 2278.

definition."[60]  The Court reasoned that "[d]ictionaries consistently define the noun 'use' to mean the 'act of employing' something,"[61] and that "[o]n that common understanding, the force involved in a qualifying assault must be volitional; an involuntary motion, even a powerful one, is not naturally described as an active employment of force."[62]  The Court also reasoned that "[t]he harm [reckless behavior] causes is the result of a deliberate decision to endanger another—no more an 'accident' than if the 'substantial risk' were 'practically certain.'"[63]  The Court observed that "the word 'use' . . . is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct."[64]

This court's reasoning in an earlier, en banc, decision on which Howell relies, *United States v. Vargas-Duran*,[65] is similar in many respects to the reasoning in *Voisine*.  In *Vargas-Duran*, the defendant had previously been convicted under a Texas statute that provided a person is guilty of intoxication assault if he or she "by accident or mistake, while operating an aircraft, watercraft or motor vehicle in a public place while intoxicated, by reason of that intoxication causes serious bodily injury to another."[66]  We held that this prior offense was not a crime of violence within the meaning of § 2L1.2 of the

---

[60] *Id.* (citing *United States v. Castleman*, 134 S. Ct. 1405 (2014)).

[61] *Id.* (citing Webster's New International Dictionary 2806 (2d ed. 1954) ("[a]ct of employing anything"); Random House Dictionary of the English Language 2097 (2d ed. 1987) ("act of employing, using, or putting into service"); Black's Law Dictionary 1541 (6th ed. 1990) ("[a]ct of employing," "application")).

[62] *Id.* at 2278-79.

[63] *Id.* at 2279.

[64] *Id.*

[65] 356 F.3d 598 (5th Cir. 2004).

[66] *Id.* at 600 (quoting Tex. Penal Code Ann. § 49.07 (West 1994)) (internal quotation marks omitted).

Guidelines.  The commentary to this section of the Guidelines defined "crime of violence" to include "an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."[67]  Like the Supreme Court in *Voisine*, we consulted dictionary definitions of "use" and concluded that "'use of force' means 'the act of employing force for any . . . purpose,' or 'to avail oneself of force.'"[68]  We also indicated that "the dictionary definitions of 'use' indicate that the word 'refers to volitional, *purposeful*, not accidental, employment of whatever is being 'used.'"[69]  We were not presented in *Vargas-Duran* with an offense in which recklessness was an element or means; the Texas statute specified "accident" or "mistake" as the levels of culpability.  We concluded that the "use . . . of physical force" phrase in § 2L1.2 of the Guidelines "requires that a defendant intentionally avail himself of that force."[70]  We had no cause to consider, and we did not consider, whether "use" of physical force could encompass recklessness.

We conclude that *Vargas-Duran* is not controlling in the present case, for at least three reasons.  First, as just noted, we did not have occasion to decide, and did not consider, whether an offense involving "recklessness" under at least some statutes could have as an element "use" of force.  Second, though a somewhat technical matter, the decision in *Vargas-Duran* concerned § 2L1.2, not § 4B1.2, of the Guidelines.  Third, the Supreme Court's subsequent decision

---

[67] *Id.* (quoting U.S.S.G. Application Note 1(B)(ii)(I)) (internal quotation marks omitted).

[68] *Id.* at 603 (quoting Webster's Third New International Dictionary of the English Language Unabridged 2523 (1993)).

[69] *Id.* at 604 (quoting *United States v. Chapa-Garza*, 243 F.3d 921, 926 (5th Cir. 2001)).

[70] *Id.* at 599; *see also id.* at 600 ("We further hold that the intentional use of force must be an element of the predicate offense if the predicate offense is to enhance a defendant's sentence.").

in *Voisine* substantially undercuts the statements in *Vargas-Duran* that "use" of force encompasses only intentional conduct.

The Supreme Court's discussion in *Voisine* of the history of modern assault statutes is also illuminating as to the backdrop against which the Sentencing Commission defined a "crime of violence" as including "use" of force against another person.  The Supreme Court noted in *Voisine* that "[s]everal decades" before Congress enacted the ACCA, "the Model Penal Code had taken the position that a *mens rea* of recklessness should generally suffice to establish criminal liability, including for assault."[71]  The Court observed that thereafter, "States quickly incorporated that view into their misdemeanor assault and battery statutes.  So in linking § 922(g)(9) to those laws, Congress must have known it was sweeping in some persons who had engaged in reckless conduct."[72]  The Sentencing Commission similarly must have known that the Model Penal Code had taken the position that a mens rea of recklessness should establish criminal liability, and that various states incorporated that view into assault statutes.  In any event, the Commission has largely modeled the "crime of violence" definition that includes of "use" of force after the ACCA's similar "use" of force provision.

We therefore conclude that the mental state of recklessness may qualify as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another" within the meaning of § 4B1.2(a)(1) of the Guidelines.  We further conclude from the terms of the

---

[71] *Voisine v. United States*, 136 S. Ct. 2272, 2280 (2016) (citing Model Penal Code § 2.02(3), cmts 4-5, at 243-44 (explaining that "purpose, knowledge, and recklessness are properly the basis for" such liability) and § 211.1 (defining assault to include "purposely, knowingly, or recklessly caus[ing] bodily injury")).

[72] *Id.* (citing *United States v. Bailey*, 34 U.S. 238, 256 (1835) (Story, J.) ("Congress must be presumed to have legislated under this known state of the laws")).

Texas statute under which Howell was convicted that the use of physical force against the person of another is an element of the crime described.  The Texas statute at issue provided in pertinent part:

> (a) A person commits an offense if the person:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
>
> . . .
>
> (b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against:
>
> . . .
>
> (2) a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code, if:
>
> . . .
>
> (B) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth. . . .[73]

The Texas Court of Criminal Appeals has held that "impeding normal breathing" within the context of § 22.01(b)(2)(B) "is *per se* a bodily injury," which is defined by the Texas Penal Code as "physical pain, illness, or any impairment of physical condition."[74]

To obtain a conviction for the least culpable Texas offense for which Howell was convicted, a jury would be required to find the defendant recklessly caused bodily injury committed by recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's

---

[73] Tex. Penal Code § 22.01(a)(1), (b)(2)(B) (West 2009).
[74] *See Marshall v. State*, 479 S.W.3d 840, 843-44 (Tex. Crim. App. 2016) (citing Tex. Penal Code § 1.07(a)(8)).

21

throat or neck or by blocking the person's nose or mouth.  It is difficult to conceive of how applying pressure to either a person's throat or neck in a manner that resulted in "impeding the normal breathing or circulation" could not involve the use of physical force.  The same is true of blocking a person's nose or mouth resulting in "impeding the normal breathing or circulation of the blood of the person."

Howell hypothesizes that the statute would be violated "[i]f a defendant allows a plastic bag to 'block' a victim's mouth or nose, and is reckless about the effect that might have."  But the statute does not contemplate that a bag might somehow, due to the recklessness of a defendant, block a victim's nose. The statute's operative language in this regard is "blocking," which connotes an affirmative action taken to block the nose or mouth.  Howell's other examples are that a defendant "while carelessly performing yardwork . . . causes a substantial amount of dirt to fall on the victim's face" or that "[i]f a victim's necktie or scarf gets caught up in a piece of equipment used by the defendant, then that defendant might end up applying pressure to the victim's neck or throat without intentionally using force."  But again, the operative language in the statute is "by applying pressure to the person's throat" or "by blocking the person's nose or mouth," indicating affirmative action on the part of the defendant that is more direct than the examples given.

More importantly, as the Supreme Court has held,

> to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case.  But he must at least point to his own case or other cases

No. 15-10336

in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.[75]

Howell has not pointed to any case in which Texas courts have applied the statute in such a manner.

\* \* \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[75] *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

No. 15-10336

DANIEL P. JORDAN III, concurring:

I concur in the ultimate holding but take no stand with respect to the discussion of the modified categorical approach. Assuming *arguendo* that Howell correctly urges the court to take the categorical approach, Texas Penal Code § 22.01(a)(1), (b)(2)(B) "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). Howell's primary argument is that a reckless breach of the Texas statute cannot constitute "use . . . of physical force." *Id.* But "[n]othing in the word 'use' . . . indicates that [§ 4B1.2(a)] applies exclusively to knowing or intentional" conduct. *Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016). When one "recklessly imped[es] the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth," Tex. Penal Code Ann. § 22.01(a)(1), (b)(2)(B) (West 2013), that person "[uses] physical force against the person of another," U.S.S.G. § 4B1.2(a)(1). *See Voisine*, 136 S. Ct. at 2278. I therefore agree that the District Court should be affirmed.

24