# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41744

United States Court of Appeals
Fifth Circuit

**FILED**
February 9, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LAZARO LOBATON–ANDRADE,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CR-670-1

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

PER CURIAM:[*]

Defendant–Appellant Lazaro Lobaton–Andrade pleaded guilty to illegal reentry after deportation and was sentenced to 46 months of imprisonment. Lobaton–Andrade appeals his sentence, asserting that a 2007 Arkansas manslaughter conviction does not qualify as "manslaughter," an enumerated "crime of violence" offense under United States Sentencing Guidelines § 2L1.2. Thus, Lobaton–Andrade contends, the district court erred in applying a 16-level crime of violence sentencing enhancement based on that conviction. We

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-41744

agree, and we VACATE his sentence and REMAND to the district court for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Defendant–Appellant Lazaro Lobaton–Andrade pleaded guilty, pursuant to a plea agreement, to manslaughter in Arkansas. At the time of Lobaton–Andrade's commission of that offense, Arkansas's manslaughter statute, Arkansas Code § 5-10-104, provided, in pertinent part, that:

(a) A person commits manslaughter if:

(1) He causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is reasonable excuse. . . .

(2) He purposely causes or aids another person to commit suicide;

(3) He recklessly causes the death of another person; or

(4) Acting alone or with one (1) or more persons he commits or attempts to commit a felony, and in the course of and in furtherance of the felony or in immediate flight therefrom:

> (A) He or an accomplice negligently causes the death of any person. . . .

The information charged Lobaton–Andrade with violating § 5-10-104(a)(1) (*i.e.*, charged that he caused the death of another under extreme emotional disturbance), but also alleged that Lobaton–Andrade "did recklessly cause the death of [another]."[1] After serving his sentence in Arkansas, Lobaton–

---

[1] Specifically, the information alleged as follows:

**Count # 1**, Offense: **5-10-104(a)(1) ~ MANSLAUGHTER. Class C Felony**

The Defendant on or about, July 18, 2004 in Benton County, Arkansas, he cause[d] the death of another person under circumstances that would be murder, except that he cause[d] the death under the influence of extreme emotional disturbance for which there is reasonable excuse

2

No. 15-41744

Andrade was deported from the United States.

Lobaton–Andrade was subsequently found by immigration officials in Brooks County, Texas, and charged with one count of being an alien who was unlawfully present in the United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b).  Lobaton–Andrade pleaded guilty, without a plea agreement, and a presentence investigation report ("PSR") was prepared using the 2014 edition of the United States Sentencing Guidelines.  The PSR recommended a base offense level of 8 pursuant to § 2L1.2(a) of the Guidelines. It also recommended a 16-level enhancement pursuant to § 2L1.2(b)(1)(A)(ii), concluding that Lobaton–Andrade's 2007 Arkansas manslaughter conviction constituted a "crime of violence" for which he received criminal history points. After reducing Lobaton–Andrade's offense level by 3 because of his acceptance of responsibility, the PSR calculated a total offense level of 21.  This total offense level, combined with a criminal history category of III, yielded an advisory sentencing range of 46 to 57 months of imprisonment.

Lobaton–Andrade objected to the 16-level enhancement based on the PSR's designation of his 2007 Arkansas conviction as a "crime of violence." Lobaton–Andrade argued that the Arkansas offense did not constitute the enumerated offense of "manslaughter" for purposes of § 2L1.2 because Arkansas permits conviction for manslaughter with a *mens rea* of only negligence.  *See* Ark. Code Ann. § 5-10-104(a)(4).  The Government argued in response that the Arkansas manslaughter statute was divisible and the record documents from Lobaton–Andrade's prior case established that he was

---

**to wit: On or about July 18, 2004, defendant did recklessly cause the death of Brandon Haley in Benton County, Arkansas by striking him with a vehicle**, against the peace and dignity of the state of Arkansas.

Lobaton–Andrade's plea agreement included an agreed statement of facts (which mirrored the "Prosecutor's Short Report of Circumstances" attached to the judgment), but does not identify the particular subsection of the statute to which he pleaded guilty.

convicted for committing the offense with a *mens rea* of recklessness.  *See id.* § 5-10-104(a)(3).  At the sentencing hearing, Lobaton–Andrade reaffirmed his objection, which the district court overruled.  The district imposed a sentence of 46 months of imprisonment, the low end of the advisory range, as well as a $100 special assessment.  Lobaton–Andrade timely appealed.

## II. THE CRIME OF VIOLENCE ENHANCEMENT

Lobaton–Andrade challenges the application of the district court's crime of violence enhancement based on his 2007 Arkansas manslaughter conviction. Because Lobaton–Andrade properly preserved his objection to that enhancement, we review whether his prior conviction qualifies as a crime of violence under the Guidelines de novo.  *See United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016).

Under the Guidelines, a defendant who is convicted of illegal reentry receives a 16-level enhancement to his base offense if he was previously deported after a felony conviction for a "crime of violence."  U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The commentary to the Guidelines defines "crime of violence" to include, in pertinent part, "manslaughter."  U.S.S.G. § 2L1.2 cmt. n.1(B)(iii).  The threshold issue raised by this appeal is whether the Arkansas manslaughter statute is divisible, such that Lobaton–Andrade's offense of conviction might be narrowed to "recklessly caus[ing] the death of another person," which is a categorical match for manslaughter under the Guidelines. Ark. Code Ann. § 5-10-104(a)(3).  If the statute is not divisible, the parties agree that Lobaton–Andrade's conviction under the Arkansas manslaughter statute would not qualify for a crime of violence enhancement under the Guidelines.

## A.  The Categorical and Modified Categorical Approaches

The concept of divisibility derives from the so-called "categorical" and "modified categorical" approaches we use to determine whether a defendant's

conviction qualifies as an enumerated offense. We generally employ the categorical approach in determining whether a prior conviction is included within an offense enumerated in the Guidelines. *See, e.g.*, *United States v. Howell*, 838 F.3d 489, 494 (5th Cir. 2016); *Hinkle*, 832 F.3d at 572. "Under this approach, [we] line up the elements of the prior offense with the elements of the generic [enumerated] offense . . . to see if they match." *Gomez–Perez v. Lynch*, 829 F.3d 323, 326 (5th Cir. 2016). "[I]f the elements of the prior offense cover conduct beyond what the generic offense covers, then it is not a qualifying offense." *Id.* at 327. Importantly, the categorical approach "do[es] not consider the actual conduct of the defendant in committing the offense," *Howell*, 838 F.3d at 494, but is instead limited to "the fact of conviction and the statutory definition of the prior offense," *Taylor v. United States*, 495 U.S. 575, 602 (1990). Thus, "even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries," a prior conviction is not a qualifying offense if the statute defines the offense more broadly than the Guidelines. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

Here, the parties agree that Lobaton–Andrade's conviction does not qualify as a crime of violence under the categorical approach because the Arkansas manslaughter statute is broader than—and thus not a categorical match with—the generic definition of manslaughter. But that does not end the inquiry because we may apply the modified categorical approach "to narrow an offense that otherwise would not be a categorical match with an enumerated offense." *Gomez–Perez*, 829 F.3d at 326. However, that approach only applies when a statute is "divisible," meaning it "sets out one or more elements of the offense in the alternative." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). In such cases, a court may "consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Id.* The documents that a court may consult—commonly referred

to as *Shepard* documents—include the indictment or information from the earlier conviction, as well as "the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Recently, in *Mathis v. United States*, the Supreme Court resolved a split among the circuits regarding what qualifies as a divisible statute, clarifying that a statute is only divisible (and, therefore, subject to the modified categorical approach) if it creates multiple offenses by listing one or more alternative elements, as opposed to merely listing alternative means of satisfying a particular element.[2] *Mathis*, 136 S. Ct. at 2251–54; *see also, e.g.*, *Gomez–Perez*, 829 F.3d at 326–27. "The practical difference being that a jury has to agree on one of multiple elements that a statute lists, whereas the jury need not agree on the same alternative means so long all jurors conclude that the defendant engaged in one of the possible means of committing a crime." *Gomez–Perez*, 829 F.3d at 327. Thus, in light of *Mathis*, we have recognized that "[t]he test to distinguish means from elements is whether a jury must agree." *Howell*, 838 F.3d 497; *see also Hinkle*, 832 F.3d at 575 ("[T]here is a difference between alternative elements of an offense and alternative means of satisfying a single element. Elements must be agreed upon by a jury." (footnote omitted)).

When "'a state court decision definitively answers the [means or elements] question'" by specifying that there need not be agreement among the jury as to the alternatively phrased items, "our inquiry is at an end" under

---

[2] "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). "Means," by contrast, are facts extraneous to the crime's legal requirements that "need neither be found by a jury nor admitted by a defendant." *Id.*

*Mathis.  Howell*, 838 F.3d at 498 (quoting *Mathis*, 136 S. Ct. at 2256). Alternatively, as *Mathis* recognizes, "the statute on its face may resolve the issue" when, for instance, the statutory alternatives carry different punishments (and so are elements) or are listed as "illustrative examples" (and so are means).  *Mathis*, 136 S. Ct. at 2256.  "And a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)."  *Id.*

State law, however, may fail to provide a clear answer to the means or elements question.  *Id.*  In such cases, *Mathis* offers courts another tool: it allows them to consult the *Shepard* documents "for 'the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.'"  *Id.* (alterations in original) (quoting *Rendon v. Holder*, 782 F.3d 466, 473–74 (9th Cir. 2015) (Kozinski, J., dissenting from denial of reh'g en banc)); *see also Ibanez–Beltran v. Lynch*, --- F. App'x ---, 2017 WL 113916, at \*3 (5th Cir. 2017) (per curiam).  If those documents "reiterat[e] all the terms of [the] law," then *Mathis* instructs that "each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt."  *Mathis*, 136 S. Ct. at 2257.  Conversely, the record documents might indicate that the statute contains elements going toward separate crimes "by referencing one alternative term to the exclusion of all others."  *Id.  Mathis* cautions, however, that "such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy '[the] demand for certainty' when determining whether a defendant was convicted of a generic offense."  *Id.* (quoting *Shepard*, 544 U.S. at 21).

## B.  Divisibility of the Arkansas Manslaughter Statute

With this background in mind, we turn to the threshold issue presented by this appeal: whether Arkansas Code § 5-10-104(a) is divisible.  As directed by *Mathis*, we begin our analysis of this issue with Arkansas law.  Arkansas's

court of appeals has permitted instructions on more than one manslaughter alternative under § 5-10-104(a) without apparently requiring a unanimous jury finding on the particular manslaughter alternative that was proved, *see Worring v. State*, 616 S.W.2d 23, 24 (Ark. Ct. App. 1981); *see also Albretsen v. State,* 454 S.W.3d 232, 235–36 (Ark. Ct. App. 2015); *Donovan v. State,* 764 S.W.2d 47, 50 (Ark. Ct. App. 1989), which suggests that the Arkansas manslaughter statute's subsections are alternative means of satisfying a single *mens rea* element. Indeed, the Arkansas Supreme Court has described the subsections of the Arkansas manslaughter statute as containing "alternative grounds," *Wyles v. State*, 182 S.W.3d 142, 146 (Ark. 2004), and found that the two second-degree murder alternatives under Arkansas Code § 5-10-103(a)— the immediately preceding section—are "two ways" of establishing a single "*mens rea* element," *Wyles v. State*, 249 S.W.3d 782, 786 (Ark. 2007).

The Government counters that Arkansas Code § 5-1-102 nonetheless makes clear that the manslaughter statute's subsections establish alternative elements going toward separate crimes.[3] § 5-1-102 defines an "element of [an] offense" to mean, in pertinent part, "the conduct, the attendant circumstances, or the result of conduct that . . . [e]stablishes the kind of culpable mental state required for the commission of the offense." According to the Government, each subsection of the manslaughter statute identifies a different "kind of culpable mental state" and, thus, a separate element. The Government's argument has some appeal but ultimately fails under scrutiny. As the Government points out, Arkansas courts have sometimes analyzed the culpable mental states set forth in the manslaughter statute separately, *see, e.g.*, *Rollins v. State*, 347 S.W.3d 20, 26 (Ark. 2009) (analyzing whether the state proved the defendant

---

[3] Therefore, according to the Government, § 5-10-104(a) actually establishes four different manslaughter offenses: (1) extreme emotional disturbance manslaughter; (2) assisted suicide manslaughter; (3) reckless manslaughter; and (4) felony manslaughter.

"recklessly caused the death of another person"), which does support its position. But in those cases only one subsection of the Arkansas manslaughter statute appears to have been charged. When more than one subsection was charged, Arkansas courts have analyzed the culpable mental state identified in the manslaughter statute's subsections collectively. *See, e.g., Worring*, 616 S.W.2d at 24 (analyzing whether there was evidence that the defendant either recklessly caused her husband's death or caused his death under extreme emotional disturbance). This suggests that Arkansas courts treat the manslaughter statute's subsections, collectively, as establishing the "kind of culpable mental state" required to commit the offense of manslaughter. Restated, it suggests that Arkansas courts treat the multiple culpable mental states set forth in the manslaughter statute as alternative means of establishing a single *mens rea* element. Under *Mathis*, this conclusion is likely sufficient to resolve the issue of divisibility. *See, e.g., Howell*, 838 F.3d at 498 (recognizing that a court's inquiry is at an end under *Mathis* when state law definitively answers the means or elements question).

But even examining the text of § 5-10-104(a), as the Government urges us to do, the result would be same. The Government argues that the Arkansas manslaughter statute is divisible because it does not offer "illustrative examples," which *Mathis* concluded set forth "only a crime's means of commission." *Mathis*, 136 S. Ct. at 2256. *Mathis* did not, however, hold the converse: that a statute that does not offer illustrative examples sets forth alternative elements going towards different crimes. *See Howell*, 838 F.3d at 497–99 (holding that a statute set forth alternative means even though it did not offer illustrative examples); *Gomez–Perez*, 829 F.3d at 328 (same). If we were writing on a clean slate, the absence of illustrative examples might well support a finding that the Arkansas manslaughter statute's subsections set forth alternative elements. *See United States v. Uribe*, 838 F.3d 667, 670 (5th

Cir. 2016) (relying on the absence of illustrative examples to conclude that statute set forth alternative elements). But we are not. As discussed *supra*, Arkansas courts have already suggested that the multiple mental states listed in the Arkansas manslaughter statute list alternative means of establishing a single *mens rea* element. And this is consistent with what has been described as "widespread acceptance" for construing analogous first-degree murder statutes setting forth multiple "mental states as alternative means of satisfying the *mens rea* element of the single crime of first-degree murder." *Schad v. Arizona*, 501 U.S. 624, 642 (1991) (plurality opinion).

If we examine the *Shepard* documents from Lobaton–Andrade's 2007 Arkansas conviction, the result is consistent. As discussed *supra*, the facts of Lobaton–Andrade's prior crime are unimportant at this stage, as the *Shepard* documents may be consulted only for the narrow purpose of determining whether the subsections of the Arkansas manslaughter statute are elements or means. *Mathis*, 136 S. Ct. at 2256–57. Here, the information alleges that Lobaton–Andrade "did recklessly cause the death of [another] . . . by striking him with a vehicle." At first blush, this suggests that the alternative mental states listed in § 5-10-104(a) constitute separate elements. *See Mathis*, 136 S. Ct. at 2257 ("[A]n indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime."); *see also Ibanez–Beltran*, --- F. App'x at ---, 2017 WL 113916, at *3. Yet the information also charges Lobaton–Andrade under a completely different subsection of the manslaughter statute—§ 5-10-104(a)(1), concerning death of another under extreme emotional disturbance—which suggests that the alternative mental states listed in § 5-10-104(a) are merely means, rather than elements. Thus, this is one of those instances where the *Shepard* documents do not "speak plainly" on the question of means or elements, and accordingly, they cannot support a

finding of divisibility. *Mathis*, 136 S. Ct. at 2257 (citing *Shepard*, 544 U.S. at 21).

In sum, the Government has failed to demonstrate that the subsections of the Arkansas manslaughter statute list alternative elements, rather than means, and that the statute is, therefore, divisible. *See, e.g., United States v. Constante*, 544 F.3d 584, 587 (5th Cir. 2008) (per curiam) (recognizing that it is the Government's burden to prove that a prior conviction qualifies for a sentencing enhancement). Because the Arkansas manslaughter statute indisputably "cover[s] a greater swath of conduct" than the Guideline's offense of manslaughter, Lobaton–Andrade's 2007 Arkansas manslaughter conviction cannot otherwise qualify as a "crime of violence" under § 2L1.2(b)(1)(A)(ii) of the Guidelines. *Mathis*, 136 S. Ct. at 2251. Therefore, the district court erred in apply the 16-level crime of violence sentencing enhancement, and Lobaton–Andrade must be resentenced.[4] We express no opinion as to the appropriate sentence on remand.

## IV. CONCLUSION

For the foregoing reasons, we VACATE Lobaton–Andrade's sentence and REMAND to the district court for resentencing.

---

[4] The parties agree that the district court's error was harmful and that Lobaton–Andrade's 2007 Arkansas manslaughter conviction would not qualify as a crime of violence on the alternative ground that it had an element of force. Accordingly, we do not separately address those issues here.