# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41551

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

EDER VLADIMIR MENDEZ-HENRIQUEZ, also known as Eder Vladimir Henriquez,

> Defendant - Appellant

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before JONES, BARKSDALE, and COSTA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

The one issue on appeal is whether a prior offense constitutes a crime of violence (COV) for imposing an enhancement under the Sentencing Guidelines. In challenging his sentence for illegal reentry after removal, in violation of 8 U.S.C. § 1326, Eder Vladimir Mendez-Henriquez asserts his sentence was erroneously enhanced under Guideline § 2L1.2, based on the district court's concluding he committed a COV; he maintains his 2008 conviction of California Penal Code § 246—for maliciously and willfully discharging a firearm at an occupied motor vehicle—does not qualify as a COV. AFFIRMED.

No. 15-41551

I.

Mendez was arrested in Texas on 10 May 2015. He admitted he entered the country illegally after deportation in 2011 and 2014, and pleaded guilty to illegal reentry after removal.

Mendez' presentence investigation report (PSR) recounted his criminal background, including the 2008 conviction under California Penal Code § 246 for maliciously and willfully discharging a firearm at an occupied motor vehicle, for which he received a five-year sentence. Section 246 provides:

> Any person who shall *maliciously and willfully* discharge a firearm at an inhabited dwelling house, occupied building, *occupied motor vehicle*, occupied aircraft, inhabited housecar, as defined in Section 362 of the Vehicle Code, or inhabited camper, as defined in Section 243 of the Vehicle Code, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for three, five, or seven years, or by imprisonment in the county jail for a term of not less than six months and not exceeding one year.
>
> As used in this section, "*inhabited*" means currently being used for dwelling purposes, whether occupied or not.

Cal. Penal Code § 246 (2008) (emphasis added). In that regard, a felony complaint charged Mendez, pursuant to § 246, with "willfully, unlawfully, and maliciously discharg[ing] a firearm at an occupied motor vehicle". The PSR recommended the offense qualified as a COV under Guideline § 2L1.2, which imposes a 16-level sentence enhancement. *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii).

Guideline § 2L1.2 defines a crime of violence as either one included in a list of enumerated offenses, or "any other offense under federal, state, or local law that has as an element the use, attempted use, or threated use of physical force against the person of another". U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). As the

2

No. 15-41551

parties agree, § 246 is not one of the enumerated offenses.  Therefore, for the COV-enhancement to apply, "the use, attempted use, or threatened use of physical force against the person of another" must be "an element" of § 246. U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

Mendez objected to the PSR, asserting § 246 is not a COV under § 2L1.2. In addition to contending § 246 is not one of the enumerated crimes listed in the Guideline, he asserted it did not require intent to shoot at an individual. He also maintained § 246 is not divisible; and, in the alternative, divisibility should not affect enhancement.  Mendez reasserted these contentions at sentencing.

The court overruled Mendez' objection and applied the 16-level COV enhancement to its calculation of the Guidelines sentencing range.  After other adjustments, the court sentenced Mendez within the advisory sentencing range to 44-months' imprisonment.

## II.

Because Mendez appeals only the enhancement, at issue is whether his conviction under California Penal Code § 246 qualifies as a COV under Guideline § 2L1.2.  Although the Guidelines are advisory only post-*Booker*, the district court must avoid significant procedural error, such as improperly calculating the Guidelines sentencing range.  *Gall v. United States*, 552 U.S. 38, 48–51 (2007).  Where a defendant preserves error by objecting at sentencing, as Mendez did here, the court's findings of fact are reviewed for clear error; its application of the Guidelines, *de novo*.  *E.g.*, *United States v. Gomez-Alvarez*, 781 F.3d 787, 791 (5th Cir. 2015).  Along that line, this court reviews "*de novo* whether a prior conviction qualifies as a [COV] within the meaning of the Guidelines". *United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (*en banc*).

During the pendency of this appeal, the Supreme Court rendered two decisive opinions on statutory interpretation for sentencing enhancement:

*Voisine v. United States*, 136 S. Ct. 2272 (2016); and *Mathis v. United States*, 136 S. Ct. 2243 (2016). While both concerned the Armed Career Criminal Act, rather than the Guidelines, each has already been imported by our court for Guidelines analysis. *See United States v. Uribe*, 838 F.3d 667, 670 (5th Cir. 2016); *United States v. Howell*, 838 F.3d 489, 501 (5th Cir. 2016); *United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016); *United States v. Conley*, No. 15-10550, 2016 WL 7187376, at *1 (5th Cir. 2016) (concerning a controlled-substance offense rather than a COV); *United States v. Bryant*, No. 14-11012, 2016 WL 5795772, at *1 (5th Cir. 2016). *Mathis* provides guidance on divisibility *vel non* and the modified categorical approach because "the primary focus of the Court's decision in *Mathis* was how to determine whether a statute is 'divisible'". *Hinkle*, 832 F.3d at 574. In conducting that analysis, *Voisine* is instructive; it is "illuminating as to the backdrop against which the Sentencing Commission defined a 'crime of violence' as including 'use' of force against another person". *Howell*, 838 F.3d at 501. These two recent—and very welcome—Supreme Court decisions clarify long-debated interpretation of sentencing enhancement, and we are, of course, bound by them—even where our court ruled to the contrary previously. *Hinkle*, 832 F.3d at 574–75.

Again, for the COV enhancement to apply in this instance, "the use, attempted use, or threatened use of physical force against the person of another" must be an element of § 246. U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). The analytical method for determining whether a predicate offense merits COV sentencing-enhancement varies by whether the statute for the offense is divisible or indivisible. *Mathis*, 136 S. Ct. at 2249. A statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes". *Id.*

If the statute is indivisible, (containing "a single . . . set of elements to define a single crime"), the sentencing court utilizes a categorical analysis. *Id.* at 2248. "The court then lines up that crime's elements alongside those of the

generic offense and sees if they match." *Id.* If they match, or if the generic offense is broader, the enhancement is applicable. *Id.* at 2248–49.

If the statute is divisible, the Court has "approved the 'modified categorical approach' for use with statutes having multiple alternative elements". *Id.* at 2249 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)); *see also United States v. Herrara-Alvarez*, 753 F.3d 132, 138 (5th Cir. 2014) (specific to COV analysis). The modified categorical approach permits analysis to extend beyond statutory language:

> [A] sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. The court can then compare that crime, as the categorical approach commands, with the relevant generic offense.

*Mathis*, 136 S. Ct. at 2249 (internal citations omitted); *see also United States v. Carbajal-Diaz*, 508 F.3d 804, 810 (5th Cir. 2007) (specific to COV analysis).

### A.

Our first inquiry is the divisibility *vel non* of § 246, which covers "any person who shall maliciously and willfully discharge a firearm at [, *inter alia*,] an inhabited dwelling house, occupied building, [or] occupied motor vehicle". Cal. Penal Code § 246. Again, a statute is divisible if it "list[s] elements in the alternative, and thereby define[s] multiple crimes". *Mathis*, 136 S. Ct. at 2249. "The first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means." *Id.* at 2256. Therefore, we inquire whether the list of targets in § 246, including "inhabited dwelling house, occupied building, [or] occupied motor vehicle", provides multiple crimes, or merely lists alternative means for committing a single crime. Cal. Penal Code § 246.

No. 15-41551

"[I]f state law fails to provide clear answers, federal judges" may look to the record of the prior conviction; and if the indictment references "one alternative term to the exclusion of all others", divisibility is strongly suggested. *Mathis*, 136 S. Ct. at 2256–57. We are not aware of definitive California case law providing whether § 246's alternative items—*inter alia,* "an inhabited dwelling house, occupied building, [or] occupied motor vehicle"—constitute alternative means of committing a single offense. Persuasively, the California Supreme Court identified "shooting at an inhabited house" as an element of the § 246 offense, to the exclusion of the other targets. *See People v. Ramirez*, 201 P.3d 466, 469 (Cal. 2009) (identified two offense elements in discharging a firearm at an inhabited dwelling house, in violation of § 246:  "(1) acting willfully and maliciously, and (2) shooting at an inhabited house"). While the court offered no blanket statement for each of the § 246 targets, the decision implies the statute lists alternative elements, rather than means. *See id.*

We turn, then, to the charging documents for Mendez' predicate offense. As noted, Mendez was charged with "willfully, unlawfully, and maliciously discharg[ing] a firearm at an occupied motor vehicle", to the exclusion of, *inter alia*, at "an inhabited dwelling house" or "occupied building". Cal. Penal Code § 246. Pursuant to *Mathis*, we hold § 246 is divisible:  the statute enumerates alternative elements for committing a felony, rather than alternative means of satisfying a particular element of a crime. *See Mathis*, 136 S. Ct. at 2249.

B.

Because § 246 is divisible, the modified categorical analysis is employed to assess whether "maliciously and willfully discharg[ing] a firearm at an . . . occupied motor vehicle" contains as an element the Guidelines' required "use, attempted use, or threatened use of physical force against the person of another" to qualify as a COV. U.S.S.G. § 2L1.2, cmt. n.1(B)(iii); *e.g., Mathis*, 136 S. Ct. at 2245–46.

6

No. 15-41551

It is well established that the modified categorical approach does not permit our considering the facts of Mendez' predicate offense, *e.g.*, *Hinkle*, 832 F.3d at 575–76; but, as discussed, we may look to, *inter alia*, his charging documents to better understand what elements of § 246 he violated and whether they constitute a COV under Guideline § 2L1.2, *Mathis*, 136 S. Ct. at 2249. Again, Mendez was charged with "willfully, unlawfully, and maliciously discharg[ing] a firearm at an occupied motor vehicle".

1.

Mendez contends: the COV qualification under Guideline § 2L1.2 requires specific intent in the predicate offense; and "discharg[ing] a firearm at an occupied motor vehicle" lacks such intent. We disagree in the light of *Voisine*.

This court has yet to publish post-*Voisine* precedent analyzing Guideline § 2L1.2. Here, we weigh pre-*Voisine* analysis of Guideline § 2L1.2, and post-*Voisine* analysis of an identically-worded Guideline.

Before *Mathis* and *Voisine*, our court analyzed Guideline § 2L1.2 in *United States v. Vargas-Duran*, 356 F.3d 598, 600 (5th Cir. 2004) (*en banc*). There, our *en-banc* court held the "use of physical force" requirement in § 2L1.2 requires more than "accidental" conduct; defendant must "intentionally avail himself of that force". *Id.* at 602, 604. Vargas' prior crime was "intoxication assault", a violation of Texas law committed by a person who, "by accident or mistake, while operating an aircraft, watercraft or motor vehicle in a public place while intoxicated, by reason of that intoxication causes serious bodily injury to another". Tex. Penal Code Ann. § 49.07 (1994). *Vargas*, 356 F.3d at 600. Far from the "malicious[] and willful[]" shooting criminalized by the California statute at issue, the predicate offense in *Vargas* was, by definition, committed "by accident or mistake". Tex. Penal Code Ann. § 49.07 (1994). Even without considering the facts of *Vargas*, the predicate offenses are markedly distinguishable.

No. 15-41551

But, only ten months after *Vargas* was decided, requiring "intention" for "use", the Supreme Court rendered *Leocal v. Ashcroft*, addressing a statutory definition nearly identical to Guideline § 2L1.2's commentary: *inter alia*, "the use . . . of physical force against the person or property of another". 543 U.S. 1, 5 (2004) (quoting 18 U.S.C. § 16). *Voisine* reminds us that *Leocal* held use of physical force against another's person or property "excludes 'merely accidental' conduct". *Voisine*, 136 S. Ct. at 2279 (quoting *Leocal*, 543 U.S. at 9). "[I]ndeed, *Leocal* itself recognized the distinction between accidents and recklessness, specifically reserving the issue whether the definition in § 16 ["the use . . . of physical force against the person or property of another"] embraces reckless conduct . . . ." *Voisine*, 136 S. Ct. at 2279–80 (citing *Leocal*, 543 U.S. at 13). Our court's "intentional"/"accidental" dichotomy for "use of force" was no longer certain.

Twelve years later, the Court undercut our dichotomy expressly: *Voisine* held "use of force" "embraces reckless conduct". *Voisine*, 136 S. Ct. at 2279–80; *see also Howell*, 838 F.3d at 501 ("[T]he Supreme Court's subsequent decision in *Voisine* substantially undercuts the statements in *Vargas–Duran* that 'use' of force encompasses only intentional conduct".). Under *Voisine*, "use" "is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct". *Voisine*, 136 S. Ct. at 2279.

In other words, "the word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is *substantially likely to do so*". *Id.* (emphasis added). Thus, post-*Voisine*, while "accidental" is still outside the realm of "use of force", our court's *Vargas* mandate of "intentionally avail[ing]", 356 F.3d at 602, is too narrow in scope. The *Vargas* dissent said as much.

8

> Despite the plain language of the § 2L1.2 [COV] definition, the court's opinion inserts the word 'intentional' before the word 'use.' There is no mens rea language with respect to the 'use of force' element in the § 2L1.2 definition. . . . Thus, the court's opinion makes the mens rea language purposely included by the Sentencing Commission [elsewhere] in this guideline superfluous, and departs from clear precedent governing statutory construction.

*Id.* at 611, 612 (Garza, J., dissenting) (internal citations omitted).

That is not to say *Voisine* merely moved a marker on a sliding scale of "use" to "non-use". To the contrary, *Voisine* articulated a separate dichotomy of volitional and non-volitional conduct, discussed *infra*. *See Voisine*, 136 S. Ct. at 2279–80. *Vargas* remains good law to the extent it echoes *Leocal* that accidental conduct is not volitional, and, therefore, does not constitute "use of force". *See Voisine*, 136 S. Ct. at 2279–80; *see also Vargas*, 356 F.3d at 602, 604. But, because Mendez was charged with "malicious[] and willful[]" conduct, that still-binding portion of *Vargas* is inapplicable to the case at hand. Cal. Penal Code § 246.

In *Howell*, our court conducted a post-*Mathis* and *Voisine* analysis of the Guidelines, though not specific to § 2L1.2. 838 F.3d at 499–503. *Howell* analyzed the "crime of violence" standard of Guideline § 4B1.2, identical to the COV definition in the commentary of § 2L1.2: "has as an element the use, attempted use, or threatened use of physical force against the person of another". *See id.* at 490–92 (quoting U.S.S.G. § 4B1.2); § 2L1.2, cmt. n.1(B)(iii).

Guideline § 4B concerns career offenders and criminal livelihood; Guideline § 2L, offenses involving immigration, naturalization, and passports. Under the *in pari materia* rule of statutory interpretation, effectively imported to Guidelines' interpretation, our court's interpretation of § 4B1.2 informs our interpretation of § 2L1.2, given the two Guidelines' identical language and

closely aligned purposes. *E.g.*, *United States v. Arnold*, 213 F.3d 894, 896 (5th Cir. 2000) (ultimate conclusion reached by "reading the sentencing guidelines *in pari materia*").

*Howell* considered whether a prior conviction for reckless conduct under Texas law contained, *inter alia*, "the use of force" as an element within the meaning of Guideline § 4B1.2(a)(1). *Howell*, 838 F.3d at 501. Our court held recklessness was sufficient in the light of *Voisine*'s holding: "the word 'use' . . . is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct". *Id.*; *see Voisine*, 136 S. Ct. at 2279.

Because the pertinent language of §§ 4B1.2 and 2L1.2 is identical, and because we are bound by the new standards of *Mathis* and *Voisine*, we look to *Howell* over *Vargas* where the two diverge in pertinent analysis. Thus, post-*Voisine*, as applied within our circuit, Guidelines provisions using the language "has as an element the use, attempted use, or threatened use of physical force against the person of another" are indifferent to *mens rea*: we concern ourselves only with whether Mendez' predicate conduct was volitional. 136 S. Ct. at 2279; *Howell*, 838 F.3d at 501; U.S.S.G. § 4B1.2; § 2L1.2, cmt. n.1(B)(iii). As noted *supra*, the offense charged against Mendez under § 246 confirms the volitional nature of his crime.

*Voisine* holds "use" separates volitional acts from involuntary motion; not recklessness from intention. 136 S. Ct. at 2278–79. Thus, "use of force" requires that the act be more than involuntary, but does not imply a requisite mental state. *See id.* Because the fuller § 246 language, "*maliciously and willfully* discharg[ing] a firearm at an . . . occupied motor vehicle", is clearly more than involuntary, Mendez' predicate offense was based on a volitional act. Cal. Penal Code § 246 (emphasis added). Therefore, Mendez' predicate offense satisfies the "use of force" portion of Guideline § 2L1.2.

No. 15-41551

2.

Again, the pertinent § 2L1.2 commentary is: "has as an element the use, attempted use, or threatened use of physical force *against the person of another*".  U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (emphasis added).  Having established that California Penal Code § 246 and Mendez' conviction under it constitute "use of force", next at issue is whether "maliciously and willfully discharg[ing] a firearm at an . . . occupied motor vehicle" satisfies the commentary's sub-element "against the person of another".  Cal. Penal Code § 246; U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

Prior decisions' Guidelines analyses turned on whether a firearm was discharged against a building or a vehicle—and sometimes held back when a state statute named both targets, discussed *infra.*  Again, although California Penal Code § 246 also includes, *inter alia,* inhabited dwelling houses and occupied buildings as targets, our analysis is specific to "discharg[ing] a firearm at an . . . occupied motor vehicle" because, as discussed *supra,* that is the specific offense charged against Mendez.  *See* Cal. Penal Code § 246; *see also United States v. Estrella*, 758 F.3d 1239, 1249 (11th Cir. 2014) (when the state law's "type-of-structure" element is divisible, the modified categorical approach may be invoked specifically toward the targeting element at issue in a given case, *i.e.*, "targeting 'a vehicle . . . occupied by a person'").  Holding to the volition-versus-intent distinction drawn in *Voisine*, our decision does not turn on whether a person in the occupied vehicle was the target.

Mendez highlights fifth circuit decisions in which similar statutes concerning discharging firearms at occupied buildings—rather than occupied vehicles—were deemed not COVs.  *See United States v. Hernandez-Perez*, 589 F. App'x 282, 283–84 (5th Cir. 2015) (concerning a North Carolina statute); *United States v. Alfaro*, 408 F.3d 204, 209 (5th Cir. 2005) (concerning a Virginia statute).

11

No. 15-41551

*Hernandez* was unpublished, thus not binding, *see* 5th Cir. R. 47.5; but, it is in any event not inconsistent with our holding today.  It concerned a predicate offense of shooting into a building, rather than a vehicle; leans on a prior fifth circuit decision also concerning shooting at a building; and was resolved without reaching modified categorical analysis.  *See generally Hernandez*, 589 F. App'x 282.  There, this court merely applied *Alfaro*, discussed below—as was appropriate at that time.  *Id.* at 283.  The critical element for our purposes in *Hernandez*, especially when considered in the light of *Voisine* and *Mathis*, is highlighted in its fourth footnote:  "We emphasize that our holding is limited to Hernandez-Perez's conviction. We are not deciding, for example, whether violating [the North Carolina statute] by *shooting into a vehicle* would be a crime of violence."  *Id.* at 284 n.4 (emphasis added).

*Alfaro* interpreted a Virginia statute similar to the California statute at issue here, though, as noted, that case concerned shooting at a building rather than a vehicle.  408 F.3d at 208.  Our court held shooting at a building was not a COV because "a defendant could violate this statute merely by shooting a gun at a building that happens to be occupied without actually shooting, attempting to shoot, or threatening to shoot another person".  *Id.* at 209.  Likewise, the tenth circuit rejected the imputation of shooting at an occupied building as a use of force against a person inside.  *See United States v. Ford*, 613 F.3d 1263, 1271–72 (10th Cir. 2010).

On the other hand, specific to firing a gun at an occupied vehicle, the seventh circuit found a COV under Guideline § 4B1.2 in *United States v. Curtis*, 645 F.3d 937, 941 (7th Cir. 2011).  While the eleventh circuit would later assert the seventh circuit's decision in *Curtis* "repeatedly emphasized that the statute it considered . . . permitted conviction only if the shooter knew or reasonably should have known that the vehicle was occupied", *Estrella*, 758 F.3d at 1251,

No. 15-41551

we view *Curtis* differently.    More than prescribing a narrow set of circumstances in which shooting at an occupied vehicle constitutes a COV, *Curtis* prescribed a narrow set of attenuated circumstances in which shooting at an occupied vehicle would *not* constitute a COV.  *See Curtis*, 645 F.3d at 942. Moreover, the seventh circuit dismissed the hypothetical in *Curtis* in which an accused "fired in the direction of a car he should *not* have reasonably known to be occupied" and was threatened with a COV enhancement.  *Id.* (emphasis in original).    There, the accused "could not be convicted of this aggravated discharge of a firearm offense because that action would be akin to criminal damage to property—not aggravated discharge of a firearm", thus a COV enhancement under the Guidelines would never be at issue.  *Id.*

> By contrast, if the shooter ignored telltale signs of the vehicle's occupancy, such as its presence at a toll booth where the shooter "reasonably should know" the vehicle is occupied, the shooter's intentional or knowing discharge of a firearm in the direction of the vehicle would violate [the state statute at issue] and in turn, such conduct would constitute a § 4B1.2(a)(1) "[COV]." Although the shooter may not have known of the vehicle's occupancy, the shooter still used, attempted to use, or threatened to use physical force against another person.

*Id.*

In *Estrella*, the earlier-referenced eleventh-circuit decision, a Florida statute that criminalized, *inter alia*, "targeting 'a vehicle being used or occupied by any person'" was deemed not a COV under Guideline § 2L1.2.  758 F.3d at 1249 (citing Fla. Stat. § 790.19).  The eleventh circuit reasoned Guideline § 2L1.2 "should not be interpreted in a way that risks application of the enhancement to true property offenses".  *Id.* at 1252.  The court explained: "Where an element would permit conviction whenever the defendant targets property that happens to be occupied, that element is 'akin to criminal damage

13

to property,' and covers conduct broader than the crimes against persons to which" the Guideline should apply. *Id.* (quoting *Curtis*, 645 F.3d at 942) (internal citation omitted).

As noted in, and one year prior to, *Estrella*, the Florida Supreme Court ruled the same statute "necessarily involves the use or threat of physical force or violence against an individual". *Estrella*, 758 F.3d at 1249 n.4 (quoting *Paul v. State*, 129 So. 3d 1058, 1059 (Fla. 2013)). The state court's reasoning persuasively tracked that of *Curtis*: shooting at an occupied vehicle "necessarily involves the use or threat of physical force or violence to an individual". *Paul*, 129 So. 3d at 1065.

While we acknowledge the eleventh circuit's ruling that the holdings in *Alfaro*, *Ford*, and *Curtis* "all support the conclusion that directing physical force against an occupied vehicle, *without more*, does not permit application of the U.S.S.G. § 2L1.2 [COV] enhancement", we disagree because that ruling has been overtaken and undermined by *Mathis* and *Voisine*. *Estrella*, 758 F.3d at 1251 (emphasis added).

Along that line, and returning to the reasoning of *Curtis* and the Florida Supreme Court, shooting at an *occupied* vehicle involves "the use, attempted use, or threatened use of physical force against the person of another". *See* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii); *Curtis*, 645 F.3d at 941–42; *Paul*, 129 So. 3d at 1065. While the modified categorical approach bids us dissect divisible elements from a state statute, we are not so called to dissect the general federal law in play. As *Curtis* considered the full "use, attempted use, or threatened use" language of Guideline § 4B1.2, so do we embrace the full "use, attempted use, or threatened use" language of Guideline § 2L1.2. *See Curtis*, 645 F.3d at 941.

The statute under which Mendez was convicted requires not only directing force against an *occupied* vehicle, but doing so "maliciously and

14

willfully". Cal. Penal Code § 246. The Florida statute at issue in *Estrella* read "wantonly or maliciously". 758 F.3d at 1243 (citing Fla. Stat. § 790.19). Given those requirements, we are not concerned, as the eleventh circuit seemed to be, that individuals who meant no harm to others will be convicted of these statutes and subject to COV enhancements. *See Curtis*, 645 F.3d at 942 (neither is the seventh circuit concerned). At the very least, even when no one is targeted, volitionally employing physical force through shooting at an occupied vehicle "threaten[s] use of physical force against the person of another". § 2L1.2, cmt. n.1(B)(iii).

In addition, "more" is involved with the California statute at issue. The language of California Penal Code § 246 is more specific than the Illinois statute at issue in *Curtis*. The Illinois statute merely prohibited discharging a firearm "'in the direction of another person or in the direction of a vehicle [the offender] knows or reasonably should know to be occupied by a person'". *Curtis*, 645 F.3d at 940 (quoting 720 Ill. Comp. Stat. 5/24-1.2(a)(2)). Here, § 246 proscribes shooting "at", not merely "in the direction of", a vehicle; and the object is definitively "an . . . occupied motor vehicle", not merely "a vehicle [the shooter] knows or reasonably should know to be occupied". The California statute falls far more in line within the Guidelines' requisite "force against the person of another". § 2L1.2, cmt. n.1 (B)(iii). In applying the modified categorical approach—against this backdrop of precedent—for deciding whether a COV is present, we cannot overstate the authority of *Mathis* and *Voisine*. "The *Mathis* decision is controlling regarding the methodology of the modified categorical approach, and we must apply its holdings, even if they are contrary to prior precedent of this court." *Hinkle*, 832 F.3d at 574. Accordingly, we hold "maliciously and willfully discharg[ing] a firearm at an . . . occupied motor vehicle" constitutes the "threatened use of

physical force against the person of another". Cal. Penal Code § 246; U.S.S.G. § 2L1.2, cmt. n.1(B)(iii).

The dissent at 1 maintains "use, attempted use, or threatened use" is not a requisite element of § 246, because, for the predicate conviction at hand, the State would be required to prove only that defendant willfully and maliciously shot a firearm and did so at an occupied motor vehicle. In other words, according to the dissent at 1, the State would not also be required to prove "defendant used, attempted to use, or threatened to use force against a person".

But, obviously, the two elements for § 246 advanced by the dissent subsume "the use, attempted use, or threatened use of physical force against the person of another"; the statute's pertaining to an "occupied", as opposed to an unoccupied, motor vehicle says as much. Re-stated, at the very least, willfully and maliciously shooting at an occupied motor vehicle has, as a subsumed element, the threatened use of force against a person. To hold otherwise would be to allow such use, attempted use, or threatened use to serve as the requisite "element" for imposing the § 2L1.2 COV enhancement only if the exact language is in the statute for the predicate offense. And, for obvious reasons, that is not the required standard. *See, e.g.*, *Voisine*, 136 S.Ct. at 2280 ("A person who assaults another recklessly 'use[s]' force"); *Howell*, 838 F.3d at 501–02 (holding "use of force" within a Texas statute that does not use the word "force").

In sum, because under the modified categorical approach, California Penal Code § 246 (and Mendez' conviction) "has as an element the use, attempted use, or threatened use of physical force against the person of another", Guideline § 2L1.2, cmt. n.1(B)(iii), his predicate offense is a COV. As a result, in applying the 16-level sentencing enhancement, the district court did not err in concluding Mendez' conviction for "maliciously and willfully discharg[ing] a firearm at an . . . occupied motor vehicle" qualified as a COV.

No. 15-41551

III.

For the foregoing reasons, judgment is AFFIRMED.

No. 15-41551

GREGG COSTA, Circuit Judge, dissenting:

I agree that the California statute is divisible, and Mendez's conviction can thus be narrowed to discharging a firearm at an occupied vehicle. CAL. PENAL CODE § 246. I also agree that the offense of discharging a firearm at an occupied vehicle poses a greater risk of injury to the occupant than the offense of discharging a firearm at an occupied building. The Guideline we are applying, however, says nothing about risk. *Contrast* 18 U.S.C. § 924(c)(3)(B); U.S.S.G. 4B1.2 (2014) (residual clauses both focusing on a "serious potential risk" of injury). It looks only at whether the state offense "has as an *element* the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (emphasis added). The California statute does not have such an element. An element, of course, is something the government must provide to convict someone of the crime. The pattern jury instruction for section 246 requires the government to prove only two elements: that 1) the "defendant willfully and maliciously shot a firearm," and 2) the "defendant shot the firearm at an occupied motor vehicle." CAL. CRIM. JURY INSTR. § 965 (2016); *see also People v. Ramirez*, 45 Cal. 4th. 980, 985 (2009). A jury does not have to find that the defendant used, attempted to use, or threatened to use force against a person.

That should end this appeal. The pattern charge embraced by the state supreme court means the California shooting-at-an-occupied-vehicle statute has the same defect as the North Carolina and Virginia shooting-at-an-occupied-building statutes that we held were not crimes of violence. *United States v. Hernandez-Perez*, 589 F. App'x 282, 283–84 (5th Cir. 2015) (per curiam)*; United States v. Alfaro*, 408 F.3d 204, 209 (5th Cir. 2005). I would adopt the view of the Tenth and Eleventh Circuits that the undisputed lack of

18

the element the Guideline requires—use, attempted use, or threatened use of force against a person—is also dispositive in statutes involving shooting at an occupied vehicle. *United States v. Estrella*, 758 F.3d 1239, 1251–52 (11th Cir. 2014); *United States v. Ford*, 613 F.3d 1263, 1272 (10th Cir. 2010) (both applying the reasoning of *Alfaro* to occupied vehicles).[1]

The broad application California courts have given section 246 provides even stronger support for that view. Not only does the statute not require the government to prove use of force against a person, but it is also not necessary that the defendant have demonstrated a conscious disregard for the life or safety of others. *In re Daniel R.*, 20 Cal. App. 4th 239, 246 (1993). The California court wrote, "To violate section 246 in this context it is not strictly necessary for a human being to be the target of the assault or that defendant's acts demonstrate a conscious disregard for the life and safety of others. It is sufficient if the probable consequence of the defendant's acts is the shots fired will make contact with the occupied vehicle itself." *Id.* In keeping with this principle, a California court upheld a conviction under section 246 for shooting at the unoccupied trailer of an occupied tractor–trailer rig. *People v. Buttles*, 223 Cal. App. 3d 1631, 1637–38 (1990).

---

[1] Neither *United States v. Voisine*, 136 S. Ct. 2272 (2016), nor *Mathis v. United States*, 136 S. Ct. 2243 (2016), undermine *Alfaro, Estrella*, or *Ford*. *Mathis* addresses when a statute is divisible so that a court may use the modified categorical approach to consider whether a narrower violation of the statute is a categorical match. I agree with the majority opinion's application of *Mathis* to narrow Mendez's crime to shooting at an occupied vehicle (as opposed to shooting at an occupied building which is also a crime under § 246).

As the majority opinion goes on to note, *Voisine* addresses the *means rea* required for the "use of force" aspect of the Guideline. I agree that the California statute meets the lower *Voisine* threshold that only requires the discharge of the firearm to be voluntary (that is, it need not be intentional; reckless discharge is enough).

The majority opinion then recognizes that a separate question remains whether California's crime of shooting at an occupied vehicle has the element of "the use, attempted use, or threatened use of physical force *against the person of another*." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (emphasis added). It does not, so the enhancement should not apply. This final portion of the analysis is the issue for which *Estrella*, *Ford*, and *Alfaro* are relevant.

No. 15-41551

I recognize that common sense would lead most to conclude that the crime of shooting a firearm at an occupied vehicle is a violent one. And at least in part because of numerous counterintuitive results like this one, this question would not matter if Mendez committed his illegal reentry offense today. Effective November 1 of last year, the Guidelines for illegal reentry have ditched the enhancements that focus on the categorical nature of prior offenses in favor of focusing on the length of the sentences received for those offenses. U.S.S.G. § 2L1.2(b)(2); *cf. Almanza-Arenas v. Lynch*, 815 F.3d 469, 482 (9th Cir. 2016) (Owens, J., concurring) (recommending the same change to the immigrations laws governing removability because a regime based on the length of a prior sentence while not "foolproof . . . cannot be worse than what we have now"). But under the old Guideline that governs this case, the focus is on the elements of the offense whether we like it or not. *See generally United States v. Bernel-Aveja*, 844 F.3d 206, 214-215 (5th Cir. 2016) (Higginbotham, J., concurring) (discussing the traditional Guidelines approach). And when the old regime did produce a result that a prior conviction was not a match with the Guideline, the effect was not to preclude any consideration of the prior offense. In exercising its discretion under *United States v. Booker*, 543 U.S. 220 (2005), the district court can consider the relative severity of the defendant's actual prior criminal conduct as opposed to the theoretical inquiry the categorical approach requires. *See* 18 U.S.C. § 3553(a)(1).

I would thus vacate the sentence and remand so the district court can make that more holistic assessment of Mendez's history.