# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-51221

United States Court of Appeals
Fifth Circuit

**FILED**
January 3, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MIGUEL ANGEL SEGOVIA-RIVAS,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:15-CR-259-1

Before REAVLEY, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

After Miguel Angel Segovia-Rivas pleaded guilty to illegal reentry into the United States, the district court sentenced him to 41 months' imprisonment and three years of supervised release, premised in large part on a 16-level enhancement for a prior conviction of a crime of violence. Because we find the enhancement to be plain error, and because we find the remaining plain-error

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

prongs satisfied, we vacate Segovia-Rivas's sentence and remand for resentencing.

## I. BACKGROUND

Miguel Angel Segovia-Rivas was deported in January 2015. The following month, United States Border Patrol agents apprehended Segovia-Rivas near Comstock, Texas. Segovia-Rivas subsequently pleaded guilty to illegal reentry, a violation of 8 U.S.C. § 1326.

The presentence investigation report (PSR) identified a base offense level of eight and recommended a 16-level enhancement for a prior Texas conviction of a "crime of violence," as defined by the (then-applicable) 2015 version of the United States Sentencing Guidelines. *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii). The prior crime was Segovia-Rivas's 2005 conviction for attempted deadly conduct, a lesser-included state-jail felony of the deadly-conduct offense contained in TEX. PENAL CODE § 22.05(b). Based upon the 16-level enhancement and a three-level reduction for acceptance of responsibility, the PSR arrived at a total offense level of 21. Coupling that total offense level with a criminal history category of II, the PSR recommended a Guidelines range of 41 to 51 months' imprisonment. Segovia-Rivas did not object to the PSR's recommendations.

At sentencing, the Government requested a sentence at the high end of the Guidelines, and Segovia-Rivas requested a below-Guidelines sentence. The district court then imposed a sentence at the bottom of the recommended range: 41 months' imprisonment with three years of supervised release. Segovia-Rivas objected only that the sentence was greater than necessary to comply with the sentencing goals contained in 18 U.S.C. § 3553(a), but he did not object to the 16-level enhancement. Segovia-Rivas timely appealed.

## II. ANALYSIS

On appeal, Segovia-Rivas challenges his sentence on one ground: the 16-level enhancement was erroneous because his 2005 conviction for

attempted deadly conduct was not a predicate crime of violence. Because Segovia-Rivas did not raise this objection before the district court, he concedes that our review is for plain error. *See United States v. Renteria-Martinez*, 847 F.3d 297, 299 (5th Cir. 2017).

## A.     The Plain-Error Standard

Plain-error review involves four prongs, each of which must be satisfied before we may intervene: (1) "there must be an error or defect . . . that has not been intentionally relinquished or abandoned"; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute"; (3) "the error must have affected the appellant's substantial rights"; and (4) "if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations and internal quotations omitted and alterations in original)."

## B. The Error

To qualify as a crime of violence under the relevant 2015 Guidelines provision, a prior conviction must either fit into an enumerated list (murder, manslaughter, etc.) or constitute an "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2(b)(1)(A)(ii). Deadly conduct is not among the enumerated offenses, so we ask whether it qualifies as a crime of violence under the latter use-of-force category.

In reaching an answer, our analytical approach depends on whether the statute is "divisible or indivisible." *United States v. Mendez-Henriquez*, 847 F.3d 214, 218 (5th Cir. 2017). If the statute contains "'a single . . . set of elements to define a single crime,'" the "statute is indivisible [and] the sentencing court utilizes a categorical analysis." *Id.* (quoting *Mathis v. United*

No. 15-51221

*States*, 136 S. Ct. 2243, 2248 (2016)). The categorical approach then asks the court to line up the offense's elements "alongside those of the generic offense" and see if they match. *Id.* (internal quotations omitted). "If they match, or if the generic offense is broader, the enhancement is applicable." *Id.* Conversely, if the statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," it is divisible, and the sentencing court will instead utilize a "modified categorical approach." *Mathis*, 136 S. Ct. at 2249. That modified categorical approach permits the court to go beyond the statutory language and examine "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements a defendant was convicted of. The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." *Id.* (citations omitted). However—and this is often the case-determinative distinction—a statute is not divisible if it contains merely alternative "means" for committing a single crime. *Id.* at 2251.

> The deadly-conduct statute reads in pertinent part as follows:
>
> (a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.
>
> (b) A person commits an offense if he knowingly discharges a firearm at or in the direction of:
>
>> (1) one or more individuals; or
>>
>> (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied.

TEX. PENAL CODE §§ 22.05(a)–(b). Both sides agree that Segovia-Rivas's conviction fell within TEX. PENAL CODE § 22.05(b): the discharge of a firearm at some qualifying target. And Segovia-Rivas does not contest that, if we were to utilize a modified categorical approach, we would classify his conviction under subsection (b)(1): the discharge of a firearm at an individual. He argues

only that the modified categorical approach is inapplicable here because the statute is indivisible.

When Segovia-Rivas was sentenced, the 16-level enhancement seemed proper. Our caselaw then treated subsections (b)(1) and (b)(2) as separate offenses (*i.e.,* a divisible statute) and subjected the statute to the modified categorical approach. *See United States v. Hernandez-Rodriguez*, 467 F.3d 492, 494 (5th Cir. 2006). In that vein, we had established that subsection (b)(1) constituted a crime of violence, *id.* at 495, but that subsection (b)(2)—without the requisite use-of-force component—did not, *United States v. Dixon*, 265 F. App'x 383, 385–86 (5th Cir. 2008) (per curiam).

Yet, something happened in the interim that caused us to change course: *Mathis* provided a much-needed clarification of the difference between "elements" and "means." 136 S. Ct. at 2253–54. *Mathis* in hand, we revisited the divisibility of TEX. PENAL CODE § 22.05(b) and held recently that subsections (b)(1) and (b)(2) constitute alternative means of committing a single offense, meaning the statute is indivisible and subject only to the categorical approach. *United States v. Perlaza-Ortiz*, 869 F.3d 375, 379 (5th Cir. 2017). In turn, we now treat a conviction under TEX. PENAL CODE § 22.05(b)—whatever the indictment may have charged—as outside the Guidelines definition of qualifying crimes of violence. *Id.* at 377, 380.

In light of *Mathis* and *Perlaza-Ortiz*, Segovia-Rivas's attempted-deadly-conduct conviction was not a crime of violence, and his corresponding 16-level enhancement was erroneous. *Id.* In evaluating the plainness of that error, we look not to then-existing law, but to the state of law at the "time of appellate consideration." *Henderson v. United States*, 568 U.S. 266, 279 (2013). We find the error clear, and as a result, the first two prongs of our plain-error review are satisfied. *Puckett*, 556 U.S. at 135.

No. 15-51221

## C. Segovia-Rivas's Substantial Rights

We turn now to the third prong of our plain-error standard: whether the erroneous enhancement affected Segovia-Rivas's substantial rights. "In the sentencing context, the third prong requires that the defendant demonstrate a 'reasonable probability' that, but for the district court's error, he would have received a lesser sentence." *United States v. Culbertson*, 712 F.3d 235, 243 (5th Cir. 2013) (quoting *United States v. Dickson*, 632 F.3d 186, 191 (5th Cir. 2011)). When "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016) (describing the so-called "ordinary case"). However, in some instances, a judge's "explanation could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines." *Id.*

Segovia-Rivas has met his burden here. The improperly-calculated Guidelines range provided for a sentence between 41 and 50 months, and Segovia-Rivas received a sentence of 41 months. Without the 16-level enhancement, the district court would have been left to apply either a four-level felony enhancement (as Segovia-Rivas suggests) or an eight-level aggravated-felony enhancement (as the Government suggests).[1] The correct Guidelines range would thus have been either eight to 14 months or 15 to 21 months. Whichever way you slice it, the correct Guidelines range would have been lower than the erroneous range employed by the district court—the ranges are far from overlapping. Were this an "ordinary case," the significant difference between Segovia-Rivas's sentence and a correct Guidelines range

---

[1] We, of course, express no view on which of these enhancements is proper.

would be more than sufficient to show prejudice under the *Molina-Martinez* rubric. *See* 136 S. Ct. at 1347.

But the Government says this is not an ordinary case, placing significant reliance on the following statement by the district court: "Sentence I impose would be the same sentence I'd impose either with or without an advisory guideline sentence—system." We are unsure what to make of this statement. Did the court mean that it would have imposed the same sentence whether the Guidelines were advisory or mandatory? Or, did the court mean that it would have imposed the same sentence whether or not there were Guidelines at all? The former inferred meaning would do little to "counter any ostensible showing of prejudice" Segovia-Rivas made. *United States v. Vonn*, 535 U.S. 55, 68 (2002). And the latter strikes us as entirely implausible in light of the sentencing record as a whole.

Indeed, the record reflects what the district court did *not* mean. The court did not demonstrate that Segovia-Rivas's 41-month sentence was untethered from the erroneous 16-level enhancement and the correspondingly higher Guidelines range—it did precisely the opposite. First, not only did the court impose a within-guidelines sentence, the following statement seems to suggest (contrary to the isolated statement above) that it felt compelled to do so: "Within an advisory guideline system, I have to pronounce a guideline sentence." Second, the court never explained what it would have done had it applied the correct range. Nor did the court have any reason to explain; it confronted only the erroneously higher range. *Cf. United States v. Rico-Mejia*, 859 F.3d 318, 323 (5th Cir. 2017) ("One way to demonstrate that the sentence was not imposed as a result of the Guidelines error is to show that the district court considered the correct Guidelines range and subsequently indicated that it would impose the same sentence even if that range applied."). Finally, and perhaps most importantly, the court emphasized again and again the role of

No. 15-51221

Segovia-Rivas's crime-of-violence conviction in the sentencing decision. For instance, the court told Segovia-Rivas that the conviction will "stay with [him] until [he] die[s]," that the conviction would "lead to increased punishment for future violation of our laws," and, most tellingly, that the conviction was "considered."

When an erroneous sentencing factor produces a higher guidelines range and is "such a central part of the district court's explanation of [the defendant's] sentence that 'we cannot confidently say that the district court would have imposed the same sentence' without it," we find prejudice. *United States v. Escalante-Reyes*, 689 F.3d 415, 424 (5th Cir. 2012) (quoting *United States v. Garcia-Quintanilla*, 574 F.3d 295, 304 (5th Cir. 2009)). Such is the case here. And because the Government has made no persuasive showing to the contrary, the third prong is satisfied.

**D. Our Discretion**

Finally, we reach the fourth prong of our plain-error review: whether "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135. We remain ever-mindful that we should not exercise our discretion lightly; the fourth prong is satisfied only "in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Olano*, 507 U.S. 725, 735–36 (2011) (citation and internal quotations omitted). In conducting the inquiry, "we consider the particular facts and degree of error in this case." *United States v. Martinez-Rodriguez*, 821 F.3d 659, 664 (5th Cir. 2016).

With the sentencing error known only upon appeal, as it was here, it may be objectionable to withhold error correction due to a standard the defendant was destined to face. But, assuming we must nevertheless examine Segovia-Rivas's case in particular, we would reach the same result.

8

No. 15-51221

On first glance, the "facts" of this case appear as somewhat of a mixed bag. As most criminal appeals do, Segovia-Rivas's case has some aggravating factors, most notably his past conviction for attempted deadly conduct. Though the guidance of *Mathis* indicates the conviction is not a technical "crime of violence," it by no means strikes us as a petty one either. That said, both the Texas court that originally sentenced Segovia-Rivas for that crime and the district court that sentenced him on the present offense saw fit to render proportionately lenient sentences. The Texas court sentenced Segovia-Rivas under a state-specific procedural quirk that permits a judge to punish a state-jail felony conviction with a Class A misdemeanor sentence "after considering the gravity and circumstances of the felony committed and the history, character, and rehabilitative needs of the defendant [and finding] that such punishment would *best serve the ends of justice*." TEX. PENAL CODE § 12.44(a) (emphasis added). And the district court below sentenced Segovia-Rivas at the very bottom of the (ultimately incorrect) Guidelines range. Whether the court did so because one decade had elapsed since Segovia-Rivas's last conviction and two decades had elapsed since his only other conviction, or because of some other mitigating factor, we do not know. But, given the lenient treatment by the two courts to take full account of Segovia-Rivas's record and circumstances, we cannot say that the facts of his case foreclose our intervention.

This is particularly true in light of the "degree" of the error before us. We have held on several occasions that the "substantial disparity between the imposed sentence and the applicable Guidelines range warrants the exercise of our discretion to correct the error." *United States v. Mudekunye*, 646 F.3d 281, 291 (5th Cir. 2011); *see also United States v. Hernandez*, 690 F.3d 613, 622 (5th Cir. 2012). So too here. The minimum distance between the high end of the Government's fallback range (15 to 21 months) and the low end of the incorrect higher range (41 to 51 months) is a full 20 months. What is more,

were the district judge to have sentenced Segovia-Rivas to the bottom end of the Government's lower range, just as it did with respect to the incorrect range, the disparity would be as great as 26 months. Put more succinctly, the improper range may have resulted in a more-than-doubled sentence. These figures approximate or exceed past disparities held sufficient to warrant error correction. *See*, *e.g.*, *United States v. John*, 597 F.3d 263, 285 (5th Cir. 2010) (exercising discretion under the fourth prong when the sentence was 21 months above the correct range); *Mudekunye*, 646 F.3d at 290–91 (doing the same for a sentence that was 19 months above the correct range); *but see United States v. Wikkerink*, 841 F.3d 327, 337–39 (5th Cir. 2016) (declining to exercise fourth-prong discretion despite 180-month sentencing disparity because of the defendant's particularly troubling background and the district court's belief that the Guidelines range did not provide adequate deterrence). We therefore find it prudent to exercise our plain-error correction in Segovia-Rivas's case.

## III. CONCLUSION

For the foregoing reasons, we vacate Segovia-Rivas's sentence and remand to the district court for resentencing. The mandate shall issue immediately. *See* FED. R. APP. P. 41(b), (c).